**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2006 APR 17 P 1: 32

U.S. DISTRICT COURT
DISTRICT OF MASS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **BEVERLY NATIONAL BANK,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **ALVARO NUNES, JOHN D. and** | * |
| **ANNE M. CREEDEN,** | * |
| **INTERNAL REVENUE SERVICE,** | * |
| **DANIEL J. CREEDEN, and** | * |
| **NORMITA SNOW-CREEDEN,** | * |
| | * |
| **Defendants.** | * |

**CIVIL ACTION NO.: 05-11585-GAO**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## INITIAL DISCOVERY DISCLOSURE OF DEFENDANT, ALVARO NUNES, PURSUANT TO FED. R. CIV. P. 26(a)(1)

### IDENTITY OF INDIVIDUAL WITH DISCOVERABLE INFORMATION

Alvaro Nunes
84 Tremont Street
Peabody, MA 01960

Subjects of information include loan amounts provided to Daniel J. Creeden and Normita S. Creeden, the purpose of the loans, consideration for the loans, and documents executed by Daniel J. Creeden and Normita S. Creeden in regard to said loans.

### DOCUMENTS SUPPORTING DEFENDANTS' CLAIMS

Defendant hereby produces copies of all documents, data compilations and tangible things that are in his possession, custody or control that defendant expects to use to support his claims or defenses in the litigation, other than for impeachment purposes.

Respectfully submitted,
Alvaro Nunes, Defendant
By his attorneys,
Ankeles, Harmon, Bonfanti,
Vontzalides & Ambeliotis, LLP

Date:  April 14, 2006

Nicholas P. Vontzalides
27 Lowell Street
Peabody, MA 01960
978.531.7000
BBO #542510

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing Initial Discovery Disclosure of Defendant, Alvaro Nunes, Pursuant to Fed.R.Civ.P.26(a)(1) has been mailed on this day to:

David J. Gallagher, Esquire
Regnante, Sterio & Osborne, LLP
401 Edgewater Place/Suite 630
Wakefield, MA 01880

Lydia Bottome Turanchik, Esquire
U.S. Department of Justice – Tax Division
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044

Daniel J. Creeden
22 Broadway
Beverly, MA 01915

Normita Snow Creeden
63 Main Street
Essex, MA 01929

this the 14th day of April, 2006.

Nicholas P. Vontzalides

## REAL ESTATE PROMISSORY NOTE

$55,000.00

April _8_, 2004
Peabody, Massachusetts

FOR VALUE RECEIVED, the undersigned, which term wherever used herein shall mean all and each of the signers of this note individually, jointly and severally promise(s) to pay to

### ALVARO NUNES

of 84 Tremont Street, Peabody, Massachusetts (hereinafter referred to as "Lender"), or order the sum of FIFTY FIVE THOUSAND and 00/100 ($55,000.00) DOLLARS together with interest thereon based on a 360 day year and actual days elapsed as follows:

A. INTEREST: Interest on the unpaid principal balance shall be due and payable on the 1st day of each month and every month hereafter commencing **June 1, 2004** at the rate of **Twelve and 00/100 (12%)** percent per annum for the full term of this note.

B. AMORTIZATION. The monthly payments during the term hereof shall be in the sum of **One Thousand Two Hundred Twenty Three and 45/100 ($1,223.45) Dollars** which sum is calculated after payment of interest to amortize the principal of this loan in **sixty (60)** installments, with interest at the rate of **twelve (12%)** percent per annum on the unpaid principal balance. A final installment equal to the then outstanding principal and interest then due shall be due and payable on **May 1, 2009, five (5) years from the date hereof,** unless sooner paid as herein provided.

This loan may be prepaid in whole or in part at any time without penalty.

The undersigned shall pay a late charge equal to ten (10%) percent of any amount not paid within two (2) days of the due date thereof.

Any payments received by the Lender from the undersigned will be applied first to any accrued and unpaid interest and then to the unpaid principal balance of the within Note, in inverse order of maturity.

Upon the occurrence of any one or more of the following Events of Default, the entire unpaid principal balance of the within Note and all unpaid accrued interest hereunder shall become immediately due and payable at the Lender's option and without notice or demand.

(a) The failure by the undersigned to pay any amount when due hereunder; (b) The failure by the undersigned to promptly, punctually, and faithfully perform or discharge any other liability of the undersigned to the Lender; (c) The failure by the undersigned to pay when due any other amount then owing by the undersigned to the Lender; (d) The determination by the Lender that any representation or warranty made by the undersigned to the Lender in any document, instrument, agreement or paper was not true or accurate when given; (e) The occurrence of any

PROMISSORY NOTE/Page 2

event of default under or the breach by the undersigned of any term or condition of any mortgage, security agreement, or other agreement which secures the obligations hereunder or any other mortgage, security agreement, or other agreement between the Lender and the undersigned or instrument or paper given the Lender by the undersigned notwithstanding that the Lender may not have exercised its rights upon default under any such other mortgage, agreement, instrument or papers; (f) The filing of any complaint, application, or petition by or against the undersigned initiating any matter in which the undersigned is or may be granted any relief from the debts of the undersigned pursuant to the Bankruptcy Code or pursuant to any other insolvency statute or procedure; (g) the offering by or entering into by the undersigned of any arrangement seeking relief or extension for the debts of the undersigned; the consent to or sufferance of the appointment of a receiver or other person over all or part of the assets of the undersigned; the granting of any trust mortgage; (h) The imposition of any lien upon any assets of the undersigned which lien is not discharged, within fifteen (15) days of its imposition; (i) The death, termination of existence, dissolution, winding up, or liquidation of the undersigned; (j) Failure by the undersigned to submit financial information on a timely basis or within 30 days of request; (k) The occurrence of any of the foregoing Events of Default with respect to any guarantor or endorser to the Lender of the liabilities of the undersigned to the Lender, as if such guarantor or endorser were the "undersigned" described therein.

In the Event of Default (as defined in the Loan Documents), without notice or demand, the same being expressly waived, the aggregate per annum rate of interest charged under the Note shall automatically be increased to eighteen (18%) per annum until such Event of Default is cured to the satisfaction of the Lender or waived in writing by the Lender.

Any and all deposits or other sums at any time credited by or due from the Lender to the undersigned or to any endorser or guarantor of the within Note, and any cash, securities, instruments, or other property of the undersigned or such endorser or guarantor in the possession of the Lender, whether for safekeeping, or otherwise, shall at all times constitute security for the within Note and for any and all liabilities of the undersigned to the Lender including, without limitation, the liability evidenced hereby, and may be applied or set off by the Lender against such liabilities at any time whether or not such liabilities are then due and whether or not other collateral is available to the Lender.

In the event that the premises securing this note or any part thereof, is sold, transferred, leased as a single unit, conveyed, mortgaged, resubdivided or otherwise voluntarily encumbered, without the written consent of the mortgagee, the entire unpaid balance shall immediately become due at the option of the mortgagee

No delay or omission by the Lender in exercising or enforcing any of its powers, rights, privileges, remedies, or discretions hereunder shall operate as a waiver thereof on that occasion nor on any other occasion. No waiver of any default hereunder shall operate as a waiver of any other default hereunder, nor as a continuing waiver.

PROMISSORY NOTE/Page 3

The undersigned, and each endorser and guarantor of this Note, shall pay all costs and expenses, including, without limitation, attorneys' fees and all expenses and disbursements of counsel, in connection with the protection or enforcement of any of the Lender's rights against the undersigned or any other endorser and guarantor and against any collateral given the Lender to secure the within Note or any other liabilities of the undersigned or such endorser and guarantor to the Lender (whether or not suit or foreclosure is instituted by or against the Lender).

The undersigned, and each endorser and guarantor of this Note, respectively waives presentment, demand, notice, and protest, and also waives any delay on the part of the holder hereof. Each assents to any extension or other indulgence (including, without limitation, the release or substitution of collateral) permitted the undersigned or any such endorser or guarantor by the Lender with respect to this Note and/or any collateral given to secure the within Note and/or any other liability of the undersigned or such endorser or guarantor to the Lender.

The within Note shall be binding upon the undersigned and each endorser and guarantor hereof and upon their respective heirs, successors, assigns, and representatives, and shall enure to the benefit of the Lender and its successors, endorsees, and assigns.

The liabilities of the undersigned and any endorser or guarantor of this Note are joint and several; provided, however, the release by the Lender of the undersigned or any one or more endorser or guarantor shall not release any other person obligated on account of this Note. Each reference in the within Note to the undersigned, any endorser, and any guarantor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated unless and until all liabilities to the Lender of the person from whom contribution is sought have been satisfied in full.

The undersigned and each endorser and guarantor hereof authorizes the Lender to complete this Note if delivered incomplete in any respect.

This Note is delivered to the Lender and shall be governed by the laws of the Commonwealth of Massachusetts, and shall take effect as a sealed instrument. The undersigned, and each endorser and guarantor of this Note submit to the jurisdiction of the courts of the Commonwealth of Massachusetts for all purposes with respect to this Note, any collateral given to secure their respective liabilities to the Lender, or their respective relationships with the Lender.

PROMISSORY NOTE/Page 4

WITNESS our hand and seal this _8th_ day of April, 2004.

WITNESS
Signed in my presence

Athan A. Vontzalides
(witness as to both)

MAKERS (the "Undersigned")

By:

Daniel J. Creeden, Individually
22 Broadway
Beverly, MA 01915

Normita Snow Creeden, Individually
22 Broadway
Beverly, MA 01915

*H:\Real Estate\Commercial\Personal loans\Notes\NUNES TO Creeden fixed P&I. NOTE.04-04.doc*

*RETURN TO:*
*Ankeles, Harmon, Bonfanti, Durkin,*
*Vontzalides & Ambeliotis, LLP*
*27 Lowell Street*
*Peabody MA 01960*

2004040800902 Bk:22640 Pg:462
04/08/2004 16:07:00 OTHER Pg 1/2

## SUBORDINATION AGREEMENT

**KNOW ALL MEN BY THESE PRESENTS,** that we, **JOHN D. CREEDEN and
ANNE M. CREEDEN,** of 120 Village Post Road, Danvers, Essex County, Massachusetts, as
present holder and owner of that certain Mortgage dated November 3, 2003, executed by
**DANIEL J. CREEDEN and NORMITA SNOW CREEDEN,** as Mortgagor(s), to us, as
Mortgagee, recorded with Essex South District Registry of Deeds in Book 22027, Page 242, and
concerning the real property commonly known and numbered **284 Cabot Street, Unit 1,
Beverly, Essex County, Massachusetts,** for valuable consideration to us in hand paid, the
receipt of which is hereby acknowledged, has and by these presents does waive the priority lien
of the said Mortgage insofar as the following described Mortgage is concerned, but not
otherwise:

(i)    That certain Mortgage to be dated April 8, 2004, by **Daniel J. Creeden and
Normita Snow Creeden,** as Mortgagor(s), to **Alvaro Nunes,** as Mortgagee, in the
amount of **FIFTY FIVE THOUSAND AND 00/100 ($55,000.00) DOLLARS,**
to be recorded herewith.

The undersigned, John D. Creeden and Anne M. Creeden hereby consenting that the lien
of the Mortgage first above described be taken as fourth and inferior to the Mortgage last above
described.

*EXECUTED as a sealed instrument* this 8th day of April, 2004.

_____          _____
Witness (as to both)                                         John D. Creeden

                                                                      _____
                                                                      Anne M. Creeden

*Box 83*

2004040800902 Bk:22640 Pg:463
04/08/2004 15:07:00 OTHER Pg 2/2

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                                                 April 8, 2004

On this 8th day of April, 2004, before me, the undersigned notary public, personally appeared John D. Creeden and Anne M. Creeden, proved to me through satisfactory evidence of identification, which were _____licenses_____ to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Athan A. Vontzalides, Notary Public
My Commission expires: 06/03/05

ESSEX SOUTH REGISTRY DISTRICT
JOHN L. O'BRIEN, JR. REGISTRY ᴏᴘ DEEDS

*RETURN TO:*
*Alvaro Nunes*
*84 Tremont Street*
*Peabody MA 01960*

DATE  *4/8/2004*

*/5:07)*

RECEIVED ___ O'CLOCK ___ M ___

BK *2264*) PG *426*

## CONDITIONAL ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT made this 8th day of April, 2004, by **DANIEL J. CREEDEN and NORMITA SNOW CREEDEN** of 22 Broadway, Beverly, Massachusetts (hereinafter called "Assignor") do hereby assign, transfer and set over unto **ALVARO NUNES** of 84 Tremont Street, Peabody, Massachusetts 01960 (hereinafter called the "Assignee").

1.    Grant of Assignment.    This ASSIGNMENT is granted pursuant to the provisions of a "Promissory Note" dated April 8, 2004 between the Assignor as "Borrower(s)" and Assignee as "Lender". Capitalized terms used herein which are not otherwise specifically defined shall have the same meaning herein as in the Loan Agreement.

The Assignor, for good and valuable consideration, receipt of which is hereby acknowledged, hereby grants, transfers and assigns to the Assignee the entire lessor's interest in, to and under all leases, rental agreements and/or occupancy agreements ("leases") now or hereafter in existence, with respect to all or any portion of the real property located at property known as **284 CABOT STREET, UNIT 1, BEVERLY, MA ("Premises").**

Assignor is the owner of the Premises. A legal description of the Premises is annexed hereto as Exhibit "A".

TOGETHER with all rents, income and profits arising from said leases and any renewals or extensions thereof and together with all rents, income and profits for the use and occupation of all or any portion of the Premises and from all other leases or occupancy agreements with respect to the Premises or any portion thereof which may have heretofore been executed or which may be executed in the future during the term of this agreement.

2.    Obligations Secured.    THIS ASSIGNMENT is made for the purpose of securing the "Obligations" as follows:

A.    The payment of the principal sum, interest at variable rates, charges and indebtedness evidenced by a promissory note ("Note") of even date herewith, including any extensions, renewals, replacements and modifications thereof, in the total original amount of **FIFTY FIVE THOUSAND and 00/100 DOLLARS ($55,000.00)** given by the Assignor, as Maker, to the order of the Assignee;

B.    The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and condition to be paid, performed, satisfied and complied with by the Assignor under and pursuant to the Loan Agreement and also by the Assignor under and pursuant to each of the other Loan Documents referred to in, or executed in connection with, the Loan Agreement;

ASSIGNMENT OF LEASE/Page 2

C. The payment of all costs, expenses, legal fees and liabilities incurred by Assignee in connection with the enforcement of any of Assignee's rights or remedies under this Assignment, the other Loan Documents, or any other instrument, agreement or document which evidences or secures any other Obligations or collateral therefore, whether now in effect or hereafter executed;

D. The payment, performance, discharge and satisfaction of every obligation of the Assignor as "Mortgagor" to Assignee as "Mortgagee" under and pursuant to the "Mortgage and Security Agreement" of even date given to Assignee to be recorded or filed herewith;

E. The payment, performance, discharge and satisfaction of each covenant, warranty, representation, undertaking and obligation of the Assignor to the Assignee under this Assignment; and

F. The payment, performance, discharge and satisfaction of all other liabilities and obligations of the Assignor to the Assignee, whether now existing or hereafter arising, direct or indirect, absolute or contingent, and including, but without limitation express or implied upon the generality of the foregoing, each such liability and obligation of the Assignor under any of the Loan Documents and each amendment, extension, modification, replacement or recasting of any one or more of the instruments, agreements and documents referred to herein or therein or executed in connection with the transactions contemplated hereby or thereby.

3. Warranties and Representations. THE ASSIGNOR WARRANTS AND REPRESENTS that it is and shall be in the future the sole owner of the entire lessor's interest in the leases and that no rent reserved in said leases has been or will be in the future otherwise assigned or anticipated, and that no rent for any period subsequent to the date of this assignment will be collected more than one (1) month in advance (except for security deposits and last month's rents taken in the usual course of business pursuant to leases approved by the Assignee).

THE ASSIGNOR FURTHER WARRANTS AND REPRESENTS that as of the date hereof (a) the leases with respect to the Premises are in full force and effect and true and complete copies thereof together with all amendments and modifications have been previously delivered to the Assignee; (b) No default exists on the part of any of the lessees or tenants or of Assignor as lessor in the performance on the part of either of the terms, covenants, provisions or agreements in the leases contained, (c) Assignor knows of no condition which with the giving of notice or the passage of time or both would constitute a default on the part of any of the lessees or the Assignor under the leases; and (d) no security deposit or advance rental payment has been made by any lessee under the leases except as specifically designated in the copies of the leases previously furnished to the Assignee.

4. Covenants. Except as may be otherwise provided for or permitted by the Loan Agreement, THE ASSIGNOR COVENANTS with the Assignee to observe and perform all the obligations imposed upon the lessor under every such lease and not to do or permit to be done anything to impair the security thereof; not to collect any of the rent,

income and profits arising or accruing under said leases or from the Premises more than one
(1) month in advance of the time when the same shall become due; not to execute any other
assignment of lessor's interest in said leases or assignment of rents arising or accruing from
said leases or from the Premises; not to alter, modify or change the terms of said leases or
cancel or terminate the same or accept a surrender or assignment or subletting thereof without
the prior written consent of the Assignee in each instance; not to subordinate any such lease
to any mortgage or other encumbrance or permit, consent or agree to such subordination
without Assignee's prior written consent in each instance; not to convey or transfer or suffer
or permit a conveyance or transfer of the premises demised by any such lease or of any
interest therein so as to affect directly or indirectly a merger of the estates and rights, or a
termination or diminution of the obligations, of any lessee thereunder; not to alter, modify or
change the terms of any guaranty of any such lease or cancel or terminate any such guaranty
without the prior written consent of Assignee in each instance; not to consent to any
assignment of or subleasing under any such lease, unless in accordance with its term without
the prior written consent of the Assignee in each instance; not to enter into any future leases
without the Assignee's prior written consent in each instance; and at the Assignee's request to
assign and transfer to the Assignee any and all subsequent leases upon all or any part of the
Premises and to execute and deliver at the request of the Assignee all such further assurances
and assignments in the Premises as the Assignee shall from time to time require.

5. <u>Further Terms, Covenants and Conditions</u>. THIS ASSIGNMENT is made on
the following terms, covenants and conditions:

A. <u>Prior to Default</u>. So long as there shall exist no Event of Default, as defined in
the Loan Agreement and no default continuing uncured beyond the applicable grace period, if
any, in the performance of any obligation, covenant or agreement herein or in the other Loan
Documents, or in said leases contained and on the part of the Assignor to be performed, the
Assignor shall have the right to collect at the time of, but not more than one (1) month prior
to, the date provided for the payment thereof, all rents, income and profits arising under said
leases or from the premises described therein (except for security deposits and last month's
rents received in the normal course of business) and, subject to the provisions of the other
Loan Documents, to retain, use and enjoy the same.

B. <u>After Default</u>. Upon or at any time after an Event of Default or upon default
in the performance of any other obligation, covenant or agreement herein or in the other Loan
Documents, or said leases contained and on the part of the Assignor to be performed, and the
continuance of any such default for a period beyond the applicable grace period, if any, the
Assignee, without in any way waiving such default, may at its option, without notice, and
without regard to the adequacy of the security for the Obligations secured hereby and by the
Mortgage and Security Agreement, either in person or by agent, with or without bringing any
action or proceedings, or by a receiver appointed by a court, take possession of the Premises
and have, hold, manage, lease and operate the same on such terms and for such period of time
as the Assignee may deem proper and, either with or without taking possession of the
Premises in its own name, demand, sue for, or otherwise collect and receive, all rents, income
and profits of the Premises, including those past due and unpaid, with full power to make
from time to time all improvements, alterations, renovations, repairs and replacements thereto

ASSIGNMENT OF LEASE/Page 4

or thereof as may seem proper to the Assignee, and to apply such rents, income and profits to the payment of:

(i) all reasonable expenses of managing the Premises including, without being limited thereto, the salaries, fees and wages of a managing agent and such other employees as the Assignee may deem necessary or desirable, and all expenses of operating and maintaining the Premises, including, without being limited thereto, all taxes, charges, claims, assessments, water rents, sewer rents and other liens, and premiums for all insurance which the Assignee may deem necessary or desirable, the payment or refund of security deposits, or interest thereon, and the cost of all improvements, alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Premises; and

(ii) all sums which the Assignor is responsible to pay under the Mortgage and Security Agreement, and the principal sum, interest and indebtedness secured hereby and by the Mortgage and Security Agreement, and all other Obligations together with all reasonable costs and reasonable attorneys' fees, in such order of priority as to any of the items mentioned in this Paragraph 2, as the Assignee in its sole discretion may determine, any statute, law, custom, or use to the contrary notwithstanding. The exercise by the Assignee of the option granted it in this Paragraph 2 and the collection of the rents, income and profits and the application thereof as herein provided shall not be considered a waiver by the Assignee of any default under the other Loan Documents or under said leases, or this Assignment.

C. Continuing Effect; Direction to Lessees. Upon payment in full to the Assignee of the principal sum, interest, indebtedness and other Obligations secured hereby and by the Mortgage and Security Agreement, this Assignment shall become and be void and of no effect, but the affidavit of any officer, agent, or attorney of the Assignee made in good faith showing any part of said principal, interest, indebtedness or other Obligations to remain unpaid shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon. The discharge of record of the Mortgage and Security Agreement of even date given by the Assignor to the Assignee shall constitute a discharge of this Assignment and a release of the Assignee's interest in the leases and rents assigned hereby and the reassignment thereof (without recourse to the Assignee) to the Assignor and all those claiming of record by, through or under the Assignor. The Assignor hereby authorizes and directs the Lessees named in said leases or any other or future lessees or occupants of the Premises, upon receipt from the Assignee of written notice to the effect that the Assignee is then the holder of the Note and the Mortgage and Security Agreement and that a default exists thereunder, to pay over to the Assignee all rents, income and profits arising or accruing under said leases or from the Premises and to continue so to do until otherwise notified by the Assignee.

D. No Waiver; Concurrent Rights. Nothing contained in this Assignment and no act done or omitted by the Assignee pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Assignee of its rights and remedies hereunder or any one or more of the other Loan Documents, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Assignee under the terms of any

ASSIGNMENT OF LEASE/Page 5

of the other Loan Documents. The right of the Assignee to collect said principal sums, interest and indebtedness and to enforce any other security therefore held by it may be exercised by the Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

     E.   No Liability. The Assignee shall not be liable for any loss sustained by the Assignor resulting from the Assignee's failure to let the Premises after default or from any other act or omission of the Assignee in managing the Premises after default unless such loss is caused by the willful misconduct and bad faith of the Assignee. The Assignee shall not be obligated to perform or discharge, nor does the Assignee hereby undertake to perform or discharge, any obligation, duty or liability under said leases, under any ground lease or under or by reason of this Assignment, and the Assignor shall, and does hereby agree to, indemnify the Assignee for, and to hold the Assignee harmless from, any and all liability, loss or damage which may or might be incurred under or by reason of this Assignment and from any and all claims and demands whatsoever which may be asserted against the Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in said leases or any ground lease. Should the Assignee incur any such liability under said leases or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby and by the Mortgage and Security Agreement and by the other collateral for the Obligations and the Assignor shall reimburse the Assignee therefore immediately upon demand and upon the failure of the Assignor so to do, the Assignee may, at its option, declare all sums secured hereby immediately due and payable. It is further understood that this Assignment shall not operate to place responsibility for the control, care, management or repair of said Premises upon the Assignee, nor for the carrying out of any of the terms and conditions of said leases or any ground lease; nor shall it operate to make the Assignee responsible or liable for any waste committed on the Premises by tenants or any other parties, or for any dangerous or defective condition of the Premises, or for any negligence in the management, upkeep, repair or control of said Premises resulting in loss or injury or death to any tenant, licensee, employee or stranger.

     F.   Effect of Foreclosure Deed. Upon the issuance of any deed or deeds pursuant to a foreclosure of the Mortgage, all right, title and interest of the Assignor in and to the leases shall, by virtue of this instrument and such deed or deeds, thereupon vest in and become the absolute property of the grantee or grantees in such deed or deeds without any further act or assignment by the Assignor.  Assignor hereby irrevocably appoints Assignee and its successors and assigns as its agent and attorney in fact to execute all instruments of assignment for further assurance in favor of such grantee or grantees in such deed or deeds as may be necessary or desirable for such purpose.

     G.   Upon Termination of Lease in Bankruptcy. In the event any lessee under any of the leases should be the subject of any proceeding under the Federal Bankruptcy Code, as amended from time to time, or any other federal, state or local statute which provides for the possible termination or rejection of the leases assigned hereby, Assignor covenants and agrees that if any of the leases is so terminated or rejected, no settlement for damages shall be made without the prior written consent of Assignee, in each instance, and any check in

ASSIGNMENT OF LEASE/Page 6

payment of damages for termination or rejection of any such lease will be made payable both to the Assignor and the Assignee. Assignor hereby assigns any such payment to Assignee and further covenants and agrees that upon the request of Assignee after an Event of Default, Assignor will duly endorse to the order of Assignee any such check, the proceeds of which will be applied the indebtedness secured by this Assignment

H.  Rights Contained in Mortgage.  This Assignment is intended to be supplementary to, and not in substitution for, or in derogation of, any assignment of rents to secure the Obligations contained in the Mortgage or in any other Loan Document.

I.  Notices.  Any notice or communications in connection herewith shall be sufficiently given if given in the manner provided for in the Loan Agreement or in the Mortgage.

IN WITNESS WHEREOF, the said Assignor executed these presents under seal the day and year first above written.

Athan A. Vontzalides
(Witness as to both)

Daniel J. Creeden

Normita Snow Creeden

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                                                                    April 8, 2004

On this 8th day of April, 2004, before me, the undersigned notary public, personally appeared Daniel J. Creeden and Normita Snow Creeden, proved to me through satisfactory evidence of identification, which were _licenses_ to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose.

Athan A. Vontzalides, Notary Public
My commission expires: 06/03/05

JOHN L. O'BRIEN,
DATE
RECORDED ___ O'CLOCK __ M__
BK _____ PG _____

H:\Real Estate\Commercial\Personal loans\Nunes to Creeden\Assign of Leases and Rents.doc

## Exhibit A - Property Description

Closing date:          **April 8, 2004**

Property                **284 Cabot Street, Unit 1, Beverly, Massachusetts 01915**
Address:

**All that certain premises and proportionate interest in United Merchants Condominium condominium situated in Beverly, Essex County, Massachusetts more particularly described as follows:**

**Unit 1 of United Merchants Condominium located at 280-284 Cabot Street, Beverly, Massachusetts, a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated January 23, 1986 and recorded with the Essex South County Registry of Deeds in Book 8092, Page 304, together with an undivided 8.3% interest in the common areas and facilities of the Condominium.**

**For title see deed of Lynne Wolf (f/k/a Marjorie Lynn Klohs, f/k/a Marjorie L. Benjamin) dated October 15, 1998 and recorded with the Essex South District Registry of Deeds in Book 15160, Page 343.**

ESSEX SOUTH REGISTRY DISTRICT
JOHN L. O'BRIEN, JR. REGISTRY OF DEEDS

DATE          _____

RECEIVED____O'CLOCK_M__
BK_____PG_____

## THIRD MORTGAGE AND SECURITY AGREEMENT

We, **DANIEL J. CREEDEN AND NORMITA SNOW CREEDEN** of 22 Broadway, Beverly, Massachusetts (hereinafter "Mortgagor", which term wherever used in this Mortgage shall include their successor(s) and assign(s), for consideration paid, hereby GRANTS unto **ALVARO NUNES** of 84 Tremont Street, Peabody, MA (hereinafter referred to as "Mortgagee", which term wherever used in this mortgage shall include its successors and assigns), with MORTGAGE COVENANTS, to secure payment of the principal amount and interest set forth in a note of even date from the Mortgagor to the Mortgagee, (the "Note") in the amount of **FIFTY FIVE THOUSAND AND 00/100 ($55,000.00) DOLLARS**, with interest thereon, or such part thereof as shall from time to time remain unpaid, all payable as provided in said Note, and also to secure the performance of all agreements herein contained, and/or contained in all other agreements executed in connection with said Note and the indebtedness represented thereby, and the payment and performance of all other debts, loan, obligations and liabilities of any nature, direct or indirect, absolute or contingent, present or future, owed or to be owed to the Mortgagee by the Mortgagor, the property located at **284 CABOT STREET, (UNIT 1), BEVERLY, MASSACHUSETTS 01915**, hereinafter described on Exhibit "A", attached hereto. This MORTGAGE COVENANT shall also pertain to, insofar as they are, or can by agreement of the parties be made, a part of the realty, all of the following articles now or hereafter on the above described premises or used therewith: portable or sectional buildings, bathroom, plumbing, heating, lighting, refrigerating, ice making, ventilating and air conditioning apparatus and equipment, garbage incinerators and receptacles, elevators and elevator machinery, boilers, stoves, tanks, motors, sprinkler and fire extinguishing systems, door bell and alarm systems, window shades, screens, awnings, screen doors, storm and other detachable windows and doors, trees, hardy shrubs and perennial flowers, and other fixtures whether or not included in the foregoing enumeration, (herein collectively referred to along with said parcel as the "real estate"). The term "mortgaged premises" as used in this instrument shall also refer to the said real estate.

The Mortgagor warrants and represents to, and covenants and agrees with, the Mortgagee, its successors and assigns, that:

1. <u>Good Title</u>. The Mortgagor is lawfully seized in fee simple of the mortgaged premises, and has a good right, full power and lawful authority to sell and convey the same in the manner aforesaid; and that the mortgaged premises are free and clear of all encumbrances except as herein otherwise recited, and the Mortgagor will make any further assurances of title that the Mortgagee may require.

2. <u>Payment of Indebtedness</u>. Mortgagor and each endorser or guarantor of the Note (if any) will pay the Note and interest thereon as the same shall become due and payable, and each will pay such other indebtedness for which such Mortgagor, endorser or guarantor may be liable to the Mortgagee.

ESSEX SOUTH REGISTRY DISTRICT
JOHN L. O'BRIEN, JR. REGISTRY OF DEEDS

DATE 4/8/2004
Inst. 903    15:07
RECEIVED____O'CLOCK  M__
BK 22640 PG 464

**MORTGAGE & SECURITY AGREEMENT/PAGE 2**

3. Repair and Condition. The Mortgagor will protect and maintain or cause to be maintained in good order, repair and condition at all times, the buildings and structures now standing or hereafter erected on the mortgaged premises.

4. Insurance. The Mortgagor will keep insured the mortgaged premises with fire and extended coverage insurance policies in an amount not less than 100% of the full replacement value of the mortgaged premises as determined by the Mortgagee, a Certificate of Insurance evidencing the same to be delivered to the Mortgagee and first payable in case of loss to the Mortgagee.

5. Proceeds of Insurance. The proceeds of any hazard insurance shall, at the option of the Mortgagee, be applied to or toward the indebtedness secured hereby in such order as the holder may determine or if the Mortgagee shall require repair of that part of the real estate and/or Collateral so damaged by such insured hazard, the holder shall release to the Mortgagor insurance proceeds paid to it upon such conditions as the Mortgagee may prescribe, any surplus to be applied to or toward the indebtedness secured hereby in such order as the Mortgagee may determine; notwithstanding anything in this Section 5 to the contrary, however, if the insurer denies liability to the Mortgagor, the Mortgagor shall not be relieved of any obligation under Section 3 of this Mortgage, whether or not the proceeds of insurance are applied to or toward the indebtedness secured hereby.

6. Condemnation. The awards of damages on account of any condemnation for public use of or injury to the real estate and/or Collateral shall be paid to the Mortgagee; and such awards shall, at the option of the Mortgagee, be applied to or toward the indebtedness secured hereby in such order as the Mortgagee may determine.

7. No Waste. The Mortgagor will not commit or suffer any strip or waste of the mortgaged premises or any violation of any law, rule, regulation, ordinance, license or permit, or the requirements of any licensing authority affecting the mortgaged premises or any business conducted thereon, and will not commit or suffer any demolition, removal or material alteration of any of the mortgaged premises without the prior written consent of the Mortgagee, and will not violate nor suffer the violation of the covenants and agreements, if any, of record against the mortgaged premises.

8. Payment of Taxes, etc. Mortgagor will pay before delinquent or before any penalty for nonpayment attaches thereto all taxes, assessments and charges of every nature and to whomever assessed that may now or hereafter be levied or assessed upon the mortgaged premises or any part thereof, or upon the rents, issues, income or profits thereof, or upon the lien or estate hereby created, whether any or all of said taxes, assessments or charges be levied directly or indirectly or as excise taxes or as income, but nothing herein shall be deemed to refer or apply to income taxes or taxes upon reserves, levied or assessed against the Mortgagee, except that the Mortgagor agrees to pay to the Mortgagee, on demand, the same percentage of the debt secured hereby as the Mortgagee may, from time to time, be required to pay as a state tax on so much of the Mortgagee's deposits as is invested in loans secured by mortgages of taxable real estate.

**MORTGAGE & SECURITY AGREEMENT/PAGE 3**

If requested at anytime by Mortgagee, Mortgagor shall pay to Mortgagee monthly, together with the principal and interest which may be due hereunder, a sum reasonably determined by Mortgagee to be sufficient to provide in the aggregate a fund adequate to pay each tax imposed on the property at least thirty (30) days before it becomes delinquent, and, in addition, shall pay to Mortgagee on demand any balance necessary to pay in full each Imposition at least thirty (30) days before the date on which it becomes due and payable. So long as no Event of Default has occurred, Mortgagee will apply the escrowed funds to the payment of the Impositions as they become due or release the funds to Mortgagor for such payment. After an Event of Default has occurred, the funds may be applied by Mortgagee to the payment of the Impositions or any other obligation of Mortgagor hereunder. During any period when Mortgagor is obligated to make monthly payments to Mortgage pursuant to this clause, Mortgagor shall furnish to Mortgagee all original bills relating to any Imposition promptly upon issuance.

9. Prior Liens. The Mortgagor will pay all sums, the failure to pay which may result in the acquisition of a lien prior to the lien of this Mortgage before such a prior lien may attach or which may result in conferring upon a tenant of any part or all of the mortgaged premises a right to recover such sums as a deduction from or set-off against rent or a right to terminate its lease.

10. Self-Help by Mortgagee. If the Mortgagor shall neglect or refuse (a) to maintain and keep in good repair the mortgaged premises or any part thereof as required by this instrument, or (b) to maintain and pay the premiums for, or deposit with Mortgagee, the insurance (and certificates thereof) which is required by this Mortgage, or (c) to pay and discharge all taxes of whatsoever nature, assessments and charges of every nature and to whomever assessed, as required by this Mortgage, or (d) to pay the sums required to be paid in Section 9, or (e) to satisfy any other terms or conditions of this Mortgage, the Mortgagee may, at its election, cause such repairs or replacements to be made, obtain such insurance or pay said taxes, assessments, charges, and sums, incur and pay reasonable amounts in protecting its rights hereunder and the security hereby granted, pay any balance due under any conditional agreement or sale of any property included as a part of the mortgaged premises, and pay any amounts as the Mortgagee deems necessary or appropriate to satisfy any term or condition of this Mortgage, which Mortgagor shall have failed to satisfy, or to remedy any breach of such term or condition; and any amounts or expenses so paid or incurred, together with interest thereon from the date of payment by the Mortgagee at the same rate as provided in the Notes, shall be immediately due and payable by the Mortgagor to the Mortgagee and until paid may be added to and become a part of the principal debt secured hereby, and the same may be collected as part of said principal debt in any suit hereon or upon the Notes.

11. Foreclosure Expenses, etc. If any action or proceeding be commenced, including an action to foreclose this Mortgage or to collect the debt hereby secured, to which action or proceeding the Mortgagee is made a party by reason of the execution of this Mortgage or by reason of any obligation which it secures, or by reason of entry of any other action under this Mortgage, or if it becomes necessary in connection with legal proceedings or otherwise to defend or uphold the lien of this Mortgage or any act taken under this Mortgage, all sums paid or incurred by the Mortgagee for the expense of any litigation or otherwise, in connection with any rights created by this Mortgage, shall be paid by the Mortgagor, or may at the option of the

**MORTGAGE & SECURITY AGREEMENT/PAGE 4**

Mortgagee be added to the debt secured hereby.

12. Transfer of Title, etc. Mortgagor will not transfer, sell, or encumber the mortgaged premises, or any part thereof or any interest therein or in the rents, issues and/or profits thereof without Mortgagee's prior written consent in each instance obtained. Nevertheless, the Mortgagee may, without notice to any person, deal with any successor in interest of the Mortgagor herein regarding this Mortgage and the debt hereby secured in all respects as it might deal with the Mortgagor herein, without in any way affecting the liability hereunder or upon the debt hereby secured of any guarantor thereof or of any predecessor in interest of the person so dealt with; and no sale of the mortgaged premises, nor any forbearance on the part of the Mortgagee, nor any extension by the Mortgagee at the time for payment of the debt hereby secured, shall operate to release, discharge, modify, change or affect the original liability of any guarantor or of any predecessor in interest of the equity owner at the time of such sale, forbearance or extension.

13. Disclosure of Beneficial Ownership. Mortgagor shall disclose to Mortgagee, upon request, the then owners of beneficial interest of the Mortgagor, and shall cause such beneficial owners thereof to furnish sufficient evidence to Mortgagee for Mortgagee to determine the identity of all of the parties which compose such beneficiaries.

14. Inspection. The Mortgagee shall have the right to inspect the mortgaged premises during reasonable business hours.

15. Possession by Mortgagee. In the event the Mortgagee takes possession of the mortgaged premises or any part thereof, the Mortgagee shall have the right to receive, collect, compromise and settle all receivables of the mortgaged premises and the rents, issues and profits thereof, and the Mortgagor hereby irrevocable appoints Mortgagee its true and lawful attorney-in-fact with full power of substitution, to take all action in its name or in the name of the Mortgagor for such purposes including, but not limited to the right to request delivery of mail, endorse checks, drafts or other forms or advances with the name of the Mortgagor or any other name to the same extent as the Mortgagor itself shall be entitled to endorse; and Mortgagee shall have the right to possess and use the books and records showing the operation of the mortgaged premises, and shall have the right to use the name and good will of the mortgaged premises. Mortgagee shall be liable to account only for such receivables, rents, issues and profits actually collected and received by Mortgagee. Nothing herein contained shall be deemed or construed to make the Mortgagee liable for the debts or other obligations of the Mortgagor incurred in the operation of the mortgaged premises or to make the Mortgagee a trustee of Mortgagor's assets for the benefit of Mortgagor's creditors; and Mortgagee shall have no such liability or obligation even if Mortgagee takes possession of the mortgaged premises pursuant to its rights hereunder or afforded by law.

**MORTGAGE & SECURITY AGREEMENT/PAGE 5**

16. Default. In the event that the mortgaged premises or any part thereof or any interest therein or in the rents, issued or profits thereof shall be sold, transferred, assigned, leased or otherwise disposed of, except with the prior written consent of the Mortgagee; or any security interest, lien, mortgage or other encumbrance shall be created in the mortgaged premises or any part thereof or any interest therein or in the rents, issues or profits thereof by operation of law or otherwise, whether superior or subordinate to this Mortgage, except with the prior written consent of the Mortgagee and except for the mortgages of record as of the date hereof; or any foreclosure of a mortgage or any other lien of any kind on the mortgaged premises or any part thereof should be instituted; or any levy or sale upon execution or other proceedings of any nature shall occur whereby the owner of said premises shall be deprived of owner's title or right of possession to said premises or any part thereof; or any occupancy permit for the mortgaged premises is suspended or revoked, and such suspension or revocation is not terminated within thirty (30) days; then and in any of such events, at the option of the Mortgagee, the entire debt secured by this instrument shall become immediately due and payable without notice.

The entire balance of the indebtedness secured hereby shall become immediately due and payable without notice at the option of Mortgagee in the event that; (a) there shall be any default beyond the applicable grace period (if any) under the Note or under any other instrument which may be held by Mortgagee as additional security for the indebtedness secured hereby, or (b) the Mortgagee shall elect to accelerate the maturity of the principal indebtedness pursuant to the provisions of the Note, or any other instrument which may be held by Mortgagee as additional security for the indebtedness secured hereby, or (c) any default in the performance or observance of any other warranty, representation, term, condition, covenant, agreement, or other obligation contained in this instrument shall occur, and any such default shall not have been cured within ten (10) days after written notice thereof shall have been given.

Also the entire indebtedness secured hereby shall become immediately due and payable at the option of the Mortgagee without notice, if (a) by order of a court of competent jurisdiction a receiver or liquidator or trustee of the Mortgagor, or the record owner for the time being of the mortgaged premises, or any guarantor or endorser of the Note shall be appointed and shall not have been discharged within thirty (30) days; (b) any involuntary petition under the Federal Bankruptcy Code or any other similar statute applicable to the Mortgagor, or to such owner, guarantor, or endorser shall be filed against the Mortgagor, or such owner, guarantor or endorser and shall not be dismissed within thirty (30) days after such filing; (c) the Mortgagor, or such owner, guarantor or endorser shall file a petition in voluntary bankruptcy under any provisions of any bankruptcy or reorganization petition under any such law; (d) (without limitation of the generality of the foregoing) the Mortgagor, or such owner, guarantor or endorser shall file a petition for an arrangement or reorganization pursuant to the Federal Bankruptcy Code or any other similar statute applicable to the Mortgagor, or to such owner, guarantor or endorser shall file a petition for an arrangement or reorganization pursuant to the Federal Bankruptcy Code, or any other similar statue applicable to the Mortgagor, or to such owner, guarantor or endorser; or (e) the mortgagor or such owner guarantor or endorser shall institute any proceeding for its dissolution or liquidation, or shall make an assignment or mortgage for the benefit of creditors generally, or shall admit in writing inability to pay the Mortgagor's, or such owners, guarantor's or endorser's debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator.

17. Right of Entry. The Mortgagor hereby authorizes the Mortgagee, with notice and in addition to all other rights granted by law or by this instrument, whenever and so long as any default hereunder (or occurrence or condition which, with the giving of notice of lapse of time or both would constitute a default or give the Mortgagee the right to accelerate the indebtedness secured hereby) shall exist (whether or not the applicable grace period, if any, shall have expired), to enter and take possession of all or any part of all mortgaged premises and to use, operate, manage and control the same and conduct the business thereof and collect the rents, profits and all receipts of every nature therefrom as the Mortgagee shall deem best. Upon every such entry, the Mortgagee may from time to time at the expense of the Mortgagor make all such repairs, replacements, alterations, additions and improvements to the mortgaged premises as the Mortgagee may deem proper and may exercise all rights and powers of the Mortgagor, either in the name of the Mortgagor or otherwise as the Mortgagee shall determine. The Mortgagee may, at its option, pay and incur all expenses necessary or deemed by it appropriate for the holding and operating of the mortgaged premises, the conduct of any business thereon, maintenance, repair, replacement, alteration, addition and improvement of the mortgaged premises, including without limitation payments of taxes, assessments, insurance, wages of employees connected with the mortgaged premises or any business conducted thereon, charges and reasonable compensation for services of the Mortgagee, its attorneys and accountants and all other persons engaged or employed in connection with the mortgaged premises or any business conducted thereon and, in addition, the Mortgagee, at its option, may make payments or incur liability with respect to obligations arising prior to the date it takes possession. All obligations so paid or incurred by the Mortgagee may, at the Mortgagee's option, be added to the debt secured hereby or deducted from the income or receipts of the mortgaged premises or any business conducted thereon.

18. Notices. Any demand, consent, approval, notice or request by either party to the other shall be in writing and shall be sufficiently given if delivered to the party intended to receive the same or if mailed by registered or certified mail addressed to each party at the address of such party, if to the original Mortgagee, as follows:

Alvaro Nunes
84 Tremont Street
Peabody, MA 01960

if to the mortgagor, as follows:

Daniel J. Creeden and
Normita Snow Creeden
22 Broadway
Beverly, MA 01915

or at such other address (es) as may be stated in a notice delivered or mailed as herein provided

19. Mortgagee's Remedies Optional and Cumulative. Nothing in this instrument shall be construed as obligating the Mortgagee to take any action or incur any liability with respect to

**MORTGAGE & SECURITY AGREEMENT/PAGE 7**

the mortgaged premises or any business conducted thereon, and all options given to the Mortgagee are for its benefit and shall be exercised in its sole discretion. All rights and remedies granted to Mortgagee hereunder shall be cumulative to any and all rights and remedies hereunder or afforded by law, and may be exercised by Mortgagee concurrently therewith or independently thereof.

20. <u>Invalidity of Certain Provisions</u>. In case any one or more of the provisions of this Mortgage are held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions hereof.

21. <u>Non-Waiver</u>. No consent or waiver, express or implied, by the Mortgagee to or of any default by the Mortgagor shall be construed as a consent or waiver to or of any other default. No waiver of any default or other indulgence shall be effective unless expressed in writing by the Mortgagee.

22. <u>No Oral Changes</u>. This Mortgage may not be changed orally, but only by an instrument in writing signed and acknowledged by both parties.

23. <u>Parties Bound</u>. This Mortgage shall bind and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns, and none of the provisions hereof shall be deemed to be for the benefit of or be enforceable by any tenant or any other person, firm, corporation or other entity. The term "Mortgagor" as used herein shall mean not only the within named Mortgagors but (subject to Paragraph 17 hereof) all future owners of the mortgaged premises; and the term "Mortgagee" shall mean the holder from time to time of the Note and of this Mortgage.

24. <u>Late Charges</u>. The Mortgagee may collect a "late charge" not to exceed ten cents (10¢) per month for each dollar ($1) for each payment more then two (2) days delinquent.

25. <u>Notice of Payment, etc.</u> No sale of the mortgaged premises, nor forbearance on the part of the Mortgagee, and no extension whether oral or in writing of the time for the payment of the whole or any part of the debt hereby secured or any other indulgence given by the Mortgagee to any persons other than the Mortgagor, shall operate or release or in any manner affect the original liability of the Mortgagor, or of any endorser or guarantor of the Notes, notice of any such extensions or indulgences being waived; and in case redemption is had by the Mortgagor after foreclosure proceedings have been begun, the Mortgagee shall be entitled to collect all costs, charges and expenses incurred up to the time of redemption; and in the case of foreclosure sale the Mortgagee shall be entitled to retain one percent (1%) of the purchase money in addition to the costs, charges and expenses allowed under the Statutory Power of Sale.

26. <u>Statutory Condition and Statutory Power of Sale</u>. This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all covenants and agreements of the Mortgagor contained herein and in the Note shall be kept and fully performed, for any breach of which the Mortgagee shall have the STATUTORY POWER OF SALE and such further rights and remedies as from time to time may hereafter be provided in the

**MORTGAGE & SECURITY AGREEMENT/PAGE 8**

Commonwealth of Massachusetts to mortgagees.

27. <u>Maintenance of Original Loan to Value Ratio</u>. In the event that the loan to value ratio, as established by the Mortgagee pursuant to its original appraisal obtained for the purpose of determining whether to grant the initial loan secured hereunder is exceeded at any time during the term hereof, as established by a then current appraisal obtained by the Mortgagee, then and in that event the Mortgagee shall have the right and privilege to require Mortgagor to provide Mortgagee with additional collateral and/or make a cash payment to Mortgagee in order to re-establish the original loan to value ratio or a lower loan to value ratio in accordance with then existing prudent lending practices. All costs of any reappraisal deemed necessary by the Mortgagee in connection with this paragraph shall be borne by the Mortgagor.

28. <u>Acknowledgment</u>. On the request of the holder, to furnish a written statement, signed and, if requested, acknowledged, setting forth the amount of the indebtedness which the Mortgagor acknowledges to be due on the Note and under this Mortgage, specifying any claims of offset or defense which the Mortgagor asserts against the indebtedness secured hereby or any obligations to be paid or performed hereunder, and the then state of facts relative to the condition of the Mortgaged Premises.

29. <u>Annual Statement</u>. INTENTIONALLY DELETED

30. <u>Hazardous Waste</u>. INTENTIONALLY DELETED

31. <u>Conduct of Foreclosure Sale</u>. At any foreclosure sale of the mortgaged premises, the mortgaged premises and any combination of all of any other security for the debt secured hereby may be offered for sale for one total price, and the proceeds of such sale may be accounted for in one account without distinction between the items of security or without assigning to them any proportion of such proceeds, the Mortgagor hereby waiving the application of any doctrine of marshaling; and the Mortgagee may, in the exercise of the power of sale herein given, sell the mortgaged premises in parts or parcels, said sales may be held from time to time, and the power shall not be fully executed until all of the mortgaged premises and any such other security not previously sold shall have been sold; if surplus proceeds are realized from a foreclosure sale, the Mortgagee shall not be liable for any interest thereon pending distribution of such proceeds by the Mortgagee.

EXECUTED AS A SEALED INSTRUMENT this 8th day of April, 2004.

ESSEX SOUTH REGISTRY DISTRICT
JOHN L. O'BRIEN, JR. REGISTRY of DEEDS

DATE _____

RECEIVED ___ O O O K M
BK _____ PG _____

Daniel J. Creeden

Normita Snow Creeden

**MORTGAGE & SECURITY AGREEMENT/PAGE 9**

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.                                                                April 8, 2004

On this 8th day of April, 2004, before me, the undersigned notary public, personally appeared Daniel J. Creeden and Normita Snow Creeden, proved to me through satisfactory evidence of identification, which were _____*licenses*_____ to be the persons whose names are signed on the preceding or attached document, and acknowledged to me that they signed it voluntarily for its stated purpose.



Athan A. Vontzalides, Notary Public
My commission expires: 06/03/05

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **8th day of April, 2004,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **Alvaro Nunes** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 284 Cabot Street, Unit 1, Beverly, Massachusetts 01915

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

### United Merchants Condominium

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code or regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:(i) Lender waives the provision in Section 3 for the Periodic Payment to lender of the yearly premium installments for property insurance on the property; and (ii) Borrower's obligation under Section 5 to maintain insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

Daniel J. Creeden

Normita Snow Creeden

ESSEX SOUTH REGISTRY DISTRICT
JOHN L. O'BRIEN, JR. REGISTRY OF DEEDS

DATE

RECEIVED____O'CLC :K_M__
BK_____ FG_____

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3140 1/31 (page 2 of 2 pages)
©1986-2004 Standard Solutions, Inc. 781-324-0550    FNCR3140

# Exhibit A - Property Description

Closing date:            **April 8, 2004**

Property                  **284 Cabot Street, Unit 1, Beverly, Massachusetts 01915**
Address:

All that certain premises and proportionate interest in United Merchants Condominium condominium situated in Beverly,  Essex County, Massachusetts  more particularly described as follows:

Unit 1 of United Merchants Condominium located at 280-284 Cabot Street, Beverly, Massachusetts, a condominium established pursuant to Massachusetts General Laws, Chapter 183A, by Master Deed dated January 23, 1986 and recorded with the Essex South County Registry of Deeds in Book 8092, Page 304, together with an undivided 8.3% interest in the common areas and facilities of the Condominium.

For title see deed of Lynne Wolf (f/k/a Marjorie Lynn Klohs, f/k/a Marjorie L. Benjamin) dated October 15, 1998 and recorded with the Essex South District Registry of Deeds in Book 15160, Page 343.

ESSEX SOUTH REGISTRY DISTRICT
JOHN L. O'BRIEN, JR. REGISTRY OF DEEDS

DATE            _____

RECEIVED ___ O'CLOCK_M__
BK_____ PG_____

©1986-2004 Standard Solutions, Inc. 781-324-0550